# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANTHONY MARCANTONI : | |
|    Plaintiff : | |
| : | |
| V. : | Case No. 8:18-CV-00134 |
| : | |
| : | |
| POLICE COMMISSIONER : | |
| FREDERICK H. BEALEFELD, *et.al.*, : | |
|    Defendants : | |

## MEMORANDUM IN SUPPORT OF COUNTY DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS

**I.  INTRODUCTION**

Plaintiff, Anthony Marcantoni, filed the instant action pursuant to 42 U.S.C. §1983. ECF No. 1. Mr. Marcantoni is currently serving a sentence in the Federal Bureau of Prison system for his 2012 conviction for Conspiracy to Distribute and Possess with Intent to Distribute 1000 Kilograms or more of Marijuana. Plaintiff alleges that Detectives Steven Sodd and Christopher Toland of the Baltimore County Police Department violated the Fourth Amendment by the warrantless use of a technological wire interception device, specifically a Stingray cell-site simulator, to obtain private information about items located inside his home. ECF No. 1, pp. 20-23.

Defendants, Detectives Sodd and Toland (collectively "the County Defendants"), have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The County Defendants are entitled to this relief for the following reasons:

1. Mr. Marcantoni is precluded under *Heck v. Humphries*, 512 U.S. 477 (1994)("*Heck*") from bringing this § 1983 claim, because it necessarily implies that his conviction is invalid, and he is still convicted of a crime.;

2. Mr. Marcantoni is precluded from litigating the lawfulness of the use of the cell-site simulator device on the grounds of collateral estoppel because a federal court has already determined that there was no violation of the Fourth Amendment in two separate suppression hearings during his criminal proceedings;

3. At the time Plaintiff was investigated, there was no requirement that officers first obtain a warrant in order to use a cell site simulator, and the contemporary standard cannot be applied retroactively to Plaintiff's Fourth Amendment Claims.

4. The County Defendants are entitled to qualified immunity.

## II. STATEMENT OF FACTS

In the summer of 2010, law enforcement officers in Baltimore County, Maryland began investigating the activities of an individual identified as Jacob Harryman. *See* Affidavit of Detective Steven Sodd attached as Exhibit A. Investigators believed that Mr. Harryman was part of a large drug distribution network operating in Baltimore County. *Id.* Members of this network had multiple phone lines from which business was conducted, and no one phone line was used to speak to more than one person involved in the network. *Id.* The numbers to these phone lines were changed frequently. *Id.* Detectives Sodd and Tolland were included as part of the Baltimore County Police Department's team conducting the investigation. As part of their investigation, Detectives Sodd and Tolland requested authorization to use a cell-site simulator to intercept Mr. Harryman's telephone calls to identify members of this network. *Id.* Officers received a Court Order to intercept two telephone lines connected to Mr. Harryman, 443-463-4951, which is referenced throughout the investigation as Line A, and 443-462-0393, which is referenced throughout the investigation as Line B. *Id.* Authorization to intercept another telephone line, 240-319-6579, which is referenced throughout the investigation as Line J, was

received later during the course of the investigation. *Id*. While Mr. Marcantoni was not a participant in any of the calls that were intercepted, eventually, the information disclosed in these calls, as well as visual surveillance of Mr. Harryman led investigators to Mr. Marcantoni as a member of this distribution network. Specifically, Mr. Harryman discussed an individual he referred to as "the Italian," who he owed a payment to for marijuana that had been previously supplied to him. *See* Transcript of August 12, 2011 Hearing attached as Exhibit B, p. 18, lines 14-20. While conducting surveillance of Mr. Harryman, officers witnessed him make this payment to Mr. Marcantoni. *Id.*

On December 20, 2010, Mr. Marcantoni was indicted in Baltimore County, Maryland for Possession with Intent to Distribute a Controlled Dangerous Substance and related charges. *See* Docket Entries for Case No. 3K10007479 attached as Exhibit C. The events giving rise to these charges were alleged to occur from September 1, 2010 to November 15, 2010. *Id*. On July 8, 2011, this case was entered nolle prosqui. *Id.*

On June 1, 2011, Mr. Marcantoni, along with fourteen other persons, was indicted in the United States District Court for the District of Maryland for Conspiracy to Distribute and Possess with the Intent to Distribute 1000 Kilograms or more of Marijuana and related charges. *See* Second Superseding Indictment in Case Number 8:10-CR-00777 attached as Exhibit D. The events that gave rise to these charges occurred from 2001 to January 2011, and encompassed, at least in part, the criminal activity alleged in Case No. 3K10007479. Eventually, Mr. Marcantoni was also charged with Money Laundering, Maintaining Drug-Involved Premises, and Aiding and Abetting. *See* Amended Second Superseding Indictment as to Keeghan Leahy, Daniel McIntosh, and Anthony Marcantoni attached as Exhibit E.

Federal prosecutors utilized some of the evidence gathered in the Baltimore County investigation in the prosecution of the federal charges, including evidence derived from the wiretap of Mr. Harryman's telephone line.  *See* Motion to Suppress and Memorandum in Support filed in 8:10-CR-00777 attached as Exhibit F and Consolidated Response of United States to Defendants Pre-Trial Motions filed in 8:10-CR-00777 attached as Exhibit G.  On April 20, 2012, Mr. Marcantoni, through counsel, argued that this evidence should be suppressed as the wiretap was unlawful.  *See* Exhibit F.  On May 21, 2012, Mr. Marcantoni, through counsel, also filed a Motion to Suppress Wiretap Evidence.  *See* Motion to Suppress Wiretap Evidence filed in 8:10-CR-00777 attached as Exhibit H.  On August 27, 2012, a Hearing was held on Mr. Marcantoni's Motions.  *See* Transcript of August 27, 2012 Hearing in Case Number 8:10-CR-00777 attached as Exhibit I.  The Court denied the Motion to Suppress, concluding that the "intercepts were properly authorized by the Circuit Court of Baltimore County…[and that] the conduct of the officers in carrying out the search would be protected under the Leon decision."  *Id*. at p. 53, lines 6-15.  During this Hearing, an issue as to whether the application for the wiretap for Line J was proper was raised, and the Court reserved on ruling on this issue.  *Id*. at p. 53, lines 19-23.

Mr. Marcantoni, through counsel, filed a Supplemental Motion to Suppress evidence derived from the wiretap on Line J on August 30, 2012.  *See* Supplemental Memorandum of Law with Respect to Defendant's Motion to Suppress Information and Evidence Derived from the Illegal State Wiretap of Line J filed in Case Number 8:10-CR-00777 attached as Exhibit J and Government's Response to Defendant's Supplemental Memorandum to Suppress Evidence Derived from the State Wiretap of Line J file in Case Number 8:10-CR-00777 attached as Exhibit K.  A Hearing was conducted on September 10, 2012.  *See* Transcript of September 10, 2012 Hearing in Case Number 8:10-CR-00777 attached as Exhibit L.  The Court denied the

Motion to Suppress the evidence derived from the wiretap of Line J, finding that the application for the wiretap complied with Maryland law, and that even if it did not, based on "U.S. versus Leon and its progeny the extreme sanction of suppression would not be required or appropriate." *Id*. at p. 21, lines 1-23.

In addition to the wiretap evidence, Mr. Marcantoni was identified as a large scale marijuana supplier by confidential informants, at least one of whom was also a co-defendant and member of the same criminal enterprise. *See* Exhibit B, p. 21, lines 19-25.

On September 11, 2012, Mr. Marcantoni entered a Guilty Plea to Conspiracy to Distribute and Possess with the Intent to Distribute 1000 Kilograms or More of Marijuana and he was sentenced on December 11, 2012. *See* Judgment in a Criminal Case filed in Case Number 8:10-CR-00777 attached as Exhibit M. On December 21, 2012, Mr. Marcantoni appealed his sentence, arguing, in part, that his counsel was ineffective because he did not move to suppress the evidence derived from Line J because that line was discovered using a cell site simulator. *See* Notice of Appeal filed in Case Number 8:10-CR-00777 and attached as Exhibit N. The Fourth Circuit found no merit in his appeal and his conviction was affirmed. *See Marcantoni v. United States of America*, 2016 WL 3855644 (4th Cir. 2016) attached as Exhibit O.

### III. <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), a party must plead enough facts to state a *plausible* claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

To meet the plausibility standard, a party cannot rely on mere formalistic recitation of the elements of a tort, but instead, the party must plead enough facts to show that the defendant is

liable. *Ashcroft,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)).

Importantly, "[t]he plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556)). Thus, "[w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (brackets omitted)).

As shown below, Mr. Marcantoni's Complaint fails to state a plausible claim for relief for the reasons stated.

## IV. ARGUMENT

### A. MR. MARCANTONI IS PRECLUDED UNDER *HECK* FROM RELIITGATING THE CONSTITUTIONALITY OF THE CELL SITE SIMULATOR BECAUSE HE REMAINS CONVICTED.

Initially, the Court can grant the dispositive motion because Plaintiff's § 1983 claim necessarily implies that his conviction is invalid, and he remains convicted of the crime of conspiracy to distribute drugs. It is now bedrock law that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994). Thus, the Supreme Court has held that a § 1983 claim is *not viable* where it necessarily implies that the plaintiff's criminal conviction is invalid. *Heck*, 512 U.S. at 486–87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a

§1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." (footnote omitted)).

In the case at bar, Plaintiff entered a guilty plea to the criminal charge of Conspiracy to Distribute and Possess with the Intent to Distribute 1000 Kilograms or More of Marijuana. *See* Exhibit M. That conviction still stands today, *i.e.*, Plaintiff makes no allegation that his conviction has been overturned or otherwise questioned by a proper tribunal. *See* ECF No. 1. Because this § 1983 claim necessarily implies that his conviction was invalid, the *Heck* doctrine bars his claim, *i.e.*, Plaintiff alleges that the use of a cell site simulator to obtain evidence against him in his criminal case violated his constitutional rights under the Fourth Amendment. The Court may grant the dispositive motion for this reason alone.

**B. THE DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS PLAINTIFF FROM LITIGATING THE LAWFULNESS OF THE USE OF THE CELL-SITE SIMULATOR DEVICE BECAUSE A FEDERAL COURT HAS ALREADY DETERMINED THAT THERE WAS NO VIOLATION OF THE FOURTH AMENDMENT IN TWO SEPARATE SUPPRESSION HEARINGS DURING HIS CRIMINAL PROCEEDINGS.**

Collateral estoppel is a bar to litigation where (1) an identical issue was decided in the prior adjudication; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004). "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by

merely switching adversaries." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 650-51 (1979).

In the instant matter, Mr. Marcantoni alleges that the use of the cell site simulator in the criminal investigation into the distribution ring in which he was a member violated the Fourth Amendment because it was used without a warrant or proper Court Order. Mr. Marcantoni further alleges that any evidence obtained as a result of this simulator should be suppressed as a fruit of the poisonous tree. ECF No. 1, pp. 20-21. Mr. Marcantoni made these identical arguments in his criminal proceedings. *See* Exhibits F, H, and J. Two separate hearings in front of the Honorable Roger Titus were held on the constitutionality and admissibility of the wiretap evidence and the derivative evidence it produced, at which Mr. Marcantoni was present, participated, and was represented by competent counsel. *See* Exhibits L and M. After Mr. Marcantoni had an adequate opportunity to be heard, Judge Titus denied Mr. Marcantoni's Motion to Suppress, making two findings that are relevant to these proceedings: (1) the Court Order obtained for use of the cell site simulator was made in compliance with Maryland law; and (2) even if it was not, the officers relied on it in good faith. *See* Exhibit I, p. 53, lines 6-15 and Exhibit L, p. 21, lines 1-23.

Essential to the determination as to whether suppression was the appropriate remedy was the issue of what the Fourth Amendment required at the time the technology was used in order for law enforcement officers to use a cell site simulator device. Judge Titus, in his denial of Mr. Marcantoni's Motion to Suppress, determined that a Court Order, like the one obtained by Detectives Sodd and Tolland, was sufficient. *Id*.

The factual findings and legal conclusions made by Judge Titus should bind Mr. Marcantoni in this case.

## C. THE PEN REGISTER ORDER OBTAINED IN CONNECTION WITH CELL SITE SIMULATOR IS THE SAME AS A WARRANT FOR FOURTH AMENDMENT PURPOSES.

In the decade or so since Mr. Marcantoni was subject to investigation, the legal standard for use of cell-site simulator devices has changed. "The Fourth Amendment establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const. Amend. IV. "In order to prove a Fourth Amendment violation, an individual must first demonstrate that the Amendment applies by demonstrating that there has been either a "search" or a "seizure." *Andrews v. Baltimore City Police Dep't*, 2018 WL 3649602, at \*6 (D. Md. Aug. 1, 2018). "If the individual can do so, she must then demonstrate that the search or seizure was "unreasonable." *Id.* 2018 WL 3649602, at \*6. More importantly, "[i]n order to show that a "search" or "seizure" was "unreasonable," she must show that no warrant to conduct the search or seizure was issued and that no exception to the warrant requirement applies. *Andrews v. Baltimore City Police Dep't, No.*, 2018 WL 3649602, at \*6 (citing *Carpenter v. United States*, 138 S.Ct. 2206, 2221 (2018); *Riley v. California*, 134 S.Ct. 2473, 2482 (2014); and *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

At the time that law enforcement officers began to use cell-site simulators, these devices were viewed as providing the same information that could be obtained in a pen register order ("PRO"). *Cf. Smith v. Maryland*, 442 U.S. 735 (1979) ("Telephone users…typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes…It is too much to believe that telephone subscribers…harbor any general expectation that the numbers they dial will remain secret.").

9

This legal rule is important because at least one member of this Court has found that the Pen Register Order used in connection with a cell site simulator satisfies the warrant requirement under the Fourth Amendment: "[i]n short, because the PRO was issued by a "neutral and detached magistrate"; contained a finding that "probable cause exists"; and stated with particularity the object to be searched, it was a Fourth Amendment "warrant." *Andrews*, 2018 WL 3649602, at *9 (D. Md. Aug. 1, 2018).

Here, affidavits were submitted to Judge Sherrie Bailey of the Circuit Court for Baltimore County requesting the authorization to intercept the telephone communications of Jacob Harryman and members of the criminal organization of which he was apart. *See* Exhibit A. Based on affidavits submitted by the detectives investigating this organization, two Pen Register Orders authorizing the interceptions were issued in October 2010. *Id.* Judge Titus found that "there was more than sufficient information justifying the interceptions on Mr. Harryman." *See* Exhibit I, p. 51, lines 13-16. Judge Titus further found that "the intercepts were properly authorized by the Circuit Court for Baltimore County." *Id.* at p. 53, lines 10-12. Specifically in reference to the interception of Line J, the affidavit submitted with the request for this interception identified the person to be intercepted, gave the communication facility, described the cellular phone number and who maintained the line, and described the conversations sought to be intercepted. *See* Exhibit L, p. 8, lines 17-25. Judge Titus determined that this was sufficient under Maryland law. *Id.* at p. 21, lines 12-14.

**D.   THE COUNTY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Mr. Marcantoni raises claims against Detectives Sodd and Tolland in their official capacity, claiming that the use of a cell-site simulator required a warrant, and therefore its use constituted an intentional violation of the Fourth Amendment, notwithstanding the fact that a Pen

Register Order was obtained prior to its use. ECF No. 1, pp. 20-21. The County Defendants enjoy qualified immunity from civil liability in this matter. "Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The clearly established standard is a very high bar: "To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.' " *Reichle v. Howards*, 566 U.S. 658, 664 (2012)(quoting *Ashcroft*, 563 U.S. at 741; and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The County Defendants use of the cell-site simulator at issue in this case occurred in 2010. In 2010, law enforcement officers were only required to seek an order pursuant to the applicable state or federal Pen Register Statute. *See* Exhibit P, p. 3. It was not until some years later that states began to require that law enforcement officers obtain a warrant in order to use this technology. *See State v. Andrews*, 227 Md.App. 350, 360-61 (2016) (stating that as a matter of first impression, "the government may not use a cell phone simulator without a warrant, or in the alternatively, a specialized order that requires a particularized showing of probable cause, based on sufficient information about the technology involved to allow the court to contour reasonable limitations on the scope and manner of the search, and that provides adequate protections in case any third-party cell phone information might be unintentionally intercepted."). Where a cell site simulator was obtained through a Pen Register Statute, and law enforcement officers included details of the investigation to be conducted with specificity, *Leon*'s good faith exception has been applied. 468 Md. 897 (1984); s*ee also*, *State v. Copes*, 445

11

Md. 581, 629 (2017) (stating that officers could execute an Order allowing use of a cell site simulator that does not have all the details of a warrant in good faith).

Most importantly, Detective Sodd and Tolland, at the time could have reasonably concluded the obtaining a Pen Register Order satisfied the warrant requirement under the Fourth Amendment. *See Andrews*, 2018 WL 3649602, at *9 (D. Md. Aug. 1, 2018)(citing *United States v. Wilford*, 961 F.Supp.2d 740 (D. Md. 2013), *aff'd* 689 Fed.Appx. 727 (4th Cir. 2017)(PRO satisfied the warrant requirement of Fourth Amendment.

Detectives Sodd and Tolland properly obtained a Pen Register Order pursuant to Maryland's applicable Pen Register Statute prior to utilizing the cell site simulator in their investigation of the criminal enterprise of which Mr. Marcantoni was apart. This was all that was required at the time of the investigation. Because it was not clearly established law that a warrant was required at that time, the County Defendants are entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, the County Defendants respectfully request that their Motion to Dismiss be granted, that the Court dismiss the Complaint with prejudice, and for such other relief as justice requires.

Respectfully Submitted,

**JAMES R. BENJAMIN, JR.**
Baltimore County Attorney

_____/s/_____
Andrea D. Smith, Federal Bar No.20532
Assistant County Attorney
Baltimore County Office of Law
400 Washington Avenue, Suite 219
Towson, Maryland 21204
Telephone: (410) 887-5635
Facsimile: (410) 296-0931
Email: asmith2@baltimoreountymd.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2021, a copy of Defendants Amended Motion to Dismiss and accompanying memorandum was mailed via first class mail to:

Anthony Marcantoni
12400 Owings Mills Blvd. Suite A
Reisterstown, MD 21136

_____/s/_____
Andrea D. Smith, Esq.