**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANTHONY MARCANTONI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 8:18-cv-00134-PX |
| v. | * | |
| | * | |
| STEVEN SODD, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending in this civil rights action are cross-motions for summary judgment filed by Plaintiff Anthony Marcantoni ("Marcantoni") and Defendants Steven Sodd ("Sodd") and Christopher Toland ("Toland") (collectively, "Defendants"), two detectives with the Baltimore County Police Department ("BCPD"). ECF Nos. 115 & 117. No hearing is necessary. D. Md. Loc. R. 105.6. For the following reasons, Defendants' motion for summary judgment is GRANTED, and Marcantoni's motion is DENIED as moot.

## I. Background

Except where otherwise noted, the following facts are undisputed. This case arises out of BCPD's investigation into a marijuana trafficking scheme allegedly spearheaded by Jacob Jeremiah Harryman ("Harryman"). *See* ECF No. 115-21 at 2. Detectives Sodd and Toland led the investigation, which included working with confidential informants, performing surveillance, and conducting controlled buys. ECF Nos. 115-6 at 7–8, 115-10 at 2, & 115-17 at 2.

By October of 2010, the detectives had identified Marcantoni as a significant member of Harryman's network. *Id.* at 3; ECF No. 115-21 at 2. The detectives also determined that Marcantoni was using "multiple cellular telephones to conduct [the] criminal enterprise." *Id.*

Based on that information, the detectives planned to seek a court order to wiretap Marcantoni's phones. ECF No. 115-6 at 7. But first they needed to identify the telephone numbers associated with each device that Marcantoni was using. *See* ECF No. 115-21 at 2. The detectives' specific efforts to obtain these phone numbers lie at the heart of this case.

The participants in the narcotics ring used several "burner phones" to transact business. ECF Nos. 115-6 at 93 & 115-21 at 2. Marcantoni was suspected of simultaneously employing up to nine burner phones, which customarily have no associated subscriber information. ECF No. 115-6 at 16, 108.

After receiving departmental permission, Sodd applied for a court order that allowed the detectives to use a cell-site simulator ("CSS"), sometimes referenced by its brand name, DRT, to identify the phones Marcantoni was using.[1] ECF No. 115-21 at 2; *see* ECF No. 115-5 at 10–11, 19. A CSS is a device that emits signals that mimic those from a cell phone tower. *Id.* at 10–11. "When powered on, a cell phone . . . automatically announces its presence to" nearby cell towers "via a radio signal over a control channel" that, in turn, connects with a cellular network. *United States v. Temple*, No. S1–4:15 CR 230–1 JAR (JMB), 2017 WL 7798109, at *27 (E.D. Mo. Oct. 6, 2017) (quoting *United States v. Bermudez*, No. IP 05-43-CR-B/F, 2006 WL 3197181, at *6 (S.D. Ind. June 30, 2006)). When a cell phone connects to a network, it reveals an embedded unique identifier. *See id.* at *27–28. Depending upon the cellular network and the device, this identifier might take several forms, including an Electronic Serial Number ("ESN"), Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). *Id.*; ECF No. 115-6 at 105.

[1] Between 2008 and 2010, the BCPD began purchasing CSS technology, including DRT and "StingRay II." ECF Nos. 115-3, 115-4, & 115-5 at 17.

Law enforcement can use a CSS to draw cell phones to the CSS device instead of proximate cell towers. ECF No. 115-13 at 3; *see also* ECF No. 115-5 at 21. Once the cell phones connect to the CSS, the CSS records the unique identifiers for the phones as well as their geographic locations. *Id.* at 14–15. While connected to the CSS, the cell phones cannot also connect to a cellular tower, rendering the cell phones inoperable. ECF No. 115-9 at 103.

In Marcantoni's case, Defendants used the CSS to obtain the unique identifier associated with his cell phone so that they could next link the identifier to the phone number associated with his device. ECF Nos. 115-6 at 19 & 115-21 at 2. On October 14, 2010, Sodd applied to the Circuit Court of Baltimore County for an order to use the CSS to investigate Marcantoni. ECF No 115-22. In the application, Sodd attested that Marcantoni was under investigation for drug distribution, and in connection with his drug activity, was "using one or more unidentified wireless telephones." *Id.* at 2. The application further attested that using "a pen register and trap and trace device" at locations in Baltimore County where Marcantoni lives or frequents would allow law enforcement to capture the phone's unique identifying numbers, which is what they needed to ascertain the cellphone number associated with Marcantoni's phone. *Id.* at 2–3. The application, in turn, requested

> [A]n order authorizing the installation and use of a pen register and trap and trace device for a period of sixty (60) days to detect radio signals emitted from wireless cellular telephones in the vicinity of [Marcantoni] that identify the telephones (e.g., by transmitting the telephone's serial number and phone number) to the network for authentication. By determining the identifying registration data at various locations in which the Subject Telephone is reasonably believed to be operating, the telephone number corresponding to the Subject Telephone can be identified.

*Id.* at 3. The application also informed the judge that:

> Data transmitted during autonomous registration is not dialed or otherwise controlled by the telephone user. It is an autonomous transmission that occurs when the phone is turned on and periodically thereafter, regardless of whether a call is being made, and in fact, is clearly separate from the establishment or maintenance of a call.

*Id.*

The application, however, failed to tell the court that unlike a traditional "pen register or trap and trace device," the CSS would capture more than just incoming or outgoing phone numbers. *Id.* at 2.[2]

The Circuit Court granted the application that same day by written order. ECF No. 115-23. The next day, on October 15, 2010, seven officers set up visual surveillance at Marcantoni's residence and place of business. *See* ECF No. 115-27 at 2; *see also* ECF No. 115-6 at 19 (Sodd describing the general practice of surveilling a suspect for the purpose of using CSS). Officers observed Marcantoni leaving his home, getting into his truck, and driving to his place of business, where unknown individuals waited to enter. ECF No. 115-27 at 2. Marcantoni, who was carrying a backpack, then unlocked the doors to his business and went inside. *Id.*

During the surveillance, officers deployed the CSS first when they spotted Marcantoni at his home. *Id.*; ECF No. 115-24 at 25. Officers next followed Marcantoni to his job and used the CSS again. ECF No. 115-27 at 2; *see* ECF No. 115-26 at 3. At each location, the CSS recorded

[2]A pen register is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," without recording the contents of such information. 18 U.S.C. § 3127(3); Md. Code Ann., Cts. & Jud. Proc., § 10-4B-01(c)(1). A trap-and-trace device "captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4); Md. Code Ann., Cts. & Jud. Proc., § 10-4B-01(d)(1). Accordingly, because pen registers or trap-and-trace devices capture no more than the call numbers placed to or from a known telephone number, they do not constitute a search requiring a warrant. *See Smith v. Maryland*, 442 U.S. 735, 745–46 (1979). Unlike the probable cause standard necessary to obtain a warrant, Maryland Rule 10-4B-04 regarding pen register and trap-and-trace orders requires that the issuing court find "the information likely to be obtained by the installation and use is relevant to an ongoing criminal investigation." Md. Code Ann., Cts. & Jud. Proc., § 10-4B-04(a)(1). This Court doubts that the order Detective Sodd obtained amounts to a search warrant, principally because the Circuit Court made no probable cause determination. *See State v. Andrews,* 277 Md. App. 350, 403–06 (Md. Ct. Spec. App. 2016) (holding that "the pen register statute . . . is limited by its terms and is not intended to apply to other, newer technologies," *id.* at 406, such as CSS). Further, because the Court concludes that the officers are qualifiedly immune even when construing the CSS use as a warrantless search, *see infra* at 12–14, it need not resolve this question. *Cf. Andrews v. Balt. City Police Dep't*, 2026 WL 2872021, at *12 (4th Cir. 2026) (Quattlebaum J., concurring in part and in the judgment) (reasoning that officers enjoyed qualified immunity because the application for CSS amounts to a warrant, thereby obviating the need to squarely reach whether the use of CSS technology constitutes a search).

the unique identifying numbers of all cell phones in its range. *See* ECF No. 115-26. The BCPD's Intelligence Unit next cross-referenced the unique identifiers obtained by the CSS from both locations to isolate the common identifier, and next subpoenaed from the relevant cell phone carrier the cell phone number associated with that common identifier. *See* ECF Nos. 115-5 at 15–16, 115-6 at 18, 115-7 at 19, & 115-26 at 5–6, 8; *see also* ECF No. 115-9 at 43–46. Once the Defendants obtained this information, they identified Marcantoni's cell phone number from previous wiretaps and eventually sought and obtained authorized wiretaps for that number. ECF No. 115-6 at 99–103, 106.

Thereafter, Marcantoni was federally charged with conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana. *See United States v. Nicka*, Criminal No. DKC-10-777-15 (D. Md.). During the criminal case, prosecutors did not disclose that the government used a CSS to identify Marcantoni's phone number. *See* ECF No. 115-1 at 3. Consequently, the myriad challenges to evidence obtained via wiretap did not address the issues raised in this case.

After suppression was denied on other grounds, Marcantoni ultimately pleaded guilty and was sentenced to 121 months imprisonment. *Id.* Marcantoni appealed his conviction and sentence. *Id*. While his criminal appeal was pending, he filed this civil suit pursuant to 42 U.S.C. § 1983 against Sodd and Toland, alleging that their warrantless use of the CSS had violated his Fourth Amendment right to be free from unreasonable searches and seizures. ECF No. 1. The Court dismissed the Complaint, reasoning that it was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because the criminal conviction had not been vacated or otherwise invalidated. ECF No. 3 at 2. The Fourth Circuit reversed, concluding that the Complaint was not barred because "the

claimed Fourth Amendment violation does not necessarily imply the invalidity of Marcantoni's criminal conviction." ECF No. 14-1 at 3.

The Court next entertained and denied another round of challenges to the claim. ECF No. 90 at 1. Guided by the Fourth Circuit in *Andrews v. Baltimore City Police Department*, 8 F.4th 234 (4th Cir. 2020), the Court denied dismissal to ensure full factual development on the CSS's "degree of intrusion onto constitutionally protected areas." ECF No. 90 at 3 (quoting *Andrews*, 8 F.4th at 236). The Court also appointed counsel to represent Marcantoni in further proceedings. ECF No. 92. Following the close of discovery, the parties filed cross-motions for summary judgment. *See* ECF Nos. 115 & 117. The matter is now ripe for resolution.

## II. Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuinely disputed issue of material fact, entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v.*

*Aetna Casualty & Sur. Co*., 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322. On cross-motions for summary judgment, "a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cnty. Pub. Schs.*, Civil Action No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sep. 29, 2009) (quoting *Bd. of Educ. of Frederick Cnty. v. I.S. ex rel. Summers*, 325 F. Supp. 2d 565, 578 (D. Md. 2004)).

## III. Analysis

Marcantoni argues that Defendants violated his Fourth Amendment right to freedom from unreasonable searches and seizures. He asserts that he maintained a reasonable expectation of privacy in the unique identifier captured by the CSS, and the application for use of the CSS bypassed the more demanding probable cause standard necessary to issue a search warrant. ECF Nos. 115-1 at 17–18 & 115-22 at 2. Defendants respond that using a CSS to extract the unique identifier implicates no reasonable expectation of privacy protected under the Fourth Amendment, and so, does not amount to a search. ECF No. 117-1 at 6.[3] Alternatively, Defendants argue that even if it was a search, they enjoy qualified immunity from suit. *Id.* at 20–24.

---

[3] Defendants also argue that because they did not personally deploy the CSS, they cannot be held liable for any constitutional violations. ECF No. 117 at 20. The Court rejects this argument as reductionist. Sodd and Toland by their own admission were the "lead detectives" investigating Marcantoni's place in the Harryman "drug organization," meeting weekly with Circuit judges to obtain seriatim wiretaps, pen registers, and other means of investigation. ECF No. 115-10 (Sodd Affidavit). Sodd was the affiant on the application for the CSS used to obtain Marcantoni's phone information, and Toland testified to his personal involvement in deciding to use the CSS. *Id.*; ECF No. 115-7 at 23–24. Accordingly, a reasonable juror could conclude that the Defendants decided to use the CSS even if another officer technically operated the device.

The merits of Marcantoni's claim and the defense of qualified immunity both depend on whether Defendants violated Marcantoni's Fourth Amendment right to be free from warrantless searches. Qualified immunity protects officers from civil suits arising from their alleged constitutional violations if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). Where the plaintiff has demonstrated that the challenged police conduct violates a constitutional right, the defendant officer may still be immune from suit if the "right at issue" was not "clearly established at the time of defendant's alleged misconduct." *Id.* at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Although the Court may consider these twin prongs in the order which best suits "the circumstances in the particular case at hand," *id.* at 236, it is preferable to consider first whether the officer's conduct violated the plaintiff's particular constitutional right, because such a determination advances the discourse as to whether the right is clearly established, *id.*; *Saucier*, 533 U.S. at 201. The parties have engaged in extensive discovery on the challenged police conduct, and so, the Court ought to further the doctrine, considering that few courts have wrestled with the constitutional limits of CSS technology to date. The Court thus turns first to whether the CSS deployment was a search entitled to Fourth Amendment protection.

**A. The Use of a CSS Constitutes a Search Under the Fourth Amendment**

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Its primary purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 528 (1967). A constitutionally protected search takes place when law enforcement "violates a subjective expectation of privacy that society recognizes as reasonable."

*Kyllo v. United States*, 533 U.S.C 27, 33 (2001). A reasonable expectation of privacy must derive from "a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978)). "[U]nder the reasonable expectation of privacy test, the Fourth Amendment protects against an unreasonable search of an area in which (1) a person exhibits actual, subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." *United States v. Ellis*, 270 F. Supp. 3d 1134, 1140 (N.D. Cal. 2017) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). Thus, absent well-circumscribed exceptions, the government must obtain a valid search warrant before invading an area in which an individual maintains a reasonable expectation of privacy. *See Kentucky v. King*, 563 U.S. 452, 459 (2011); *Rakas*, 439 U.S. at 143.

When law enforcement obtains evidence "by physically intruding" on "persons, houses, papers, or effects," then a search "has undoubtedly occurred." *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)). But constitutional protections are not dependent on physical intrusion. Indeed, law enforcement's use of "sense-enhancing technology" to gather information "that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area'" also amounts to a constitutionally protected search. *Kyllo*, 533 U.S. at 34 (quoting *Silverman v. United States*, 365 U.S. 505, 512 (1961)); *see Smith v. Maryland*, 442 U.S. 735, 739–41 (1979); *see also Rakas*, 439 U.S. at 143.

As the Supreme Court has instructed, reviewing courts must be mindful that new technologies may invite a "[s]ubtler and more far-reaching means of invading privacy." *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (alteration in original) (quoting *Olmstead v. United*

*States*, 277 U.S. 438, 473 (1928) (Brandeis, J., dissenting)). Because cell phones store "a digital record of nearly every aspect of [people's] lives," people enjoy a reasonable expectation of privacy in such information, and the Fourth Amendment protects against warrantless searches of the same. *Riley v. California*, 573 U.S. 373, 395, 401 (2014)*; see also Carpenter*, 585 U.S. at 310 (reasonable expectation of privacy in cell phone tracking "the whole of [a person's] physical movements,"); *Chatrie v. United States*, 146 S. Ct. 2193, 2206 (2026) (geofencing data invades cell phone possessor's reasonable expectation of privacy); *cf. United States v. Lowers*, 170 F.4th 134, 147–48 (4th Cir. 2026) (recognizing a reasonable expectation of privacy in one's digital files). When such an expectation exists, any intrusion is a search, no matter how small. *See Kyllo*, 533 U.S. at 38 (citing *Silverman*, 365 U.S. at 512; *Arizona v. Hicks*, 480 U.S. 321 (1987)). "Where the Fourth Amendment applies, it applies—regardless of 'the quality or quantity of information' the government obtains." *Chatrie*, 146 S. Ct. at 2210 (quoting *Kyllo*, 533 U.S. at 37).

In a very real sense, therefore, the existence of a constitutional violation comes down to a basic precept: When it comes to privacy, the government may not do digitally that which it may not do physically. *See Chatrie*, 146 S. Ct. at 2208; *Katz*, 389 U.S. at 512; *Jones*, 565 U.S. at 429–30 (Alito, J., concurring in the judgment); *see also In re Use of a Cell-Site Simulator to Locate a Cellular Device Associated with One Cellular Telephone Pursuant to Rule 41*, 531 F. Supp. 3d 1, 7–8 (D.D.C. 2021). A police officer may not approach a person on the street, open the person's cell phone, and search their digital files to obtain the unique identifier belonging to the phone. *Cf. Riley*, 573 U.S. at 403 ("Our answer to the question of what police must do before searching a cell phone seized incident to arrest is accordingly simple—get a warrant."). So too, the officer cannot use a CSS to grab the identical information. *Cf. Kyllo*, 533 U.S. at 34 ("We think that obtaining by sense-enhancing technology any information regarding the interior of the home that could not

otherwise have been obtained without physical 'intrusion into a constitutionally protected area,' constitutes a search . . . ." (citation omitted) (quoting *Silverman*, 365 U.S. at 512)). Based on the undisputed facts, the Detectives' use of a CSS as enhancing technology to retrieve what is otherwise embedded in the digital data of the phone amounts to a constitutionally protected search.

Defendants respond that the CSS in this context was no more invasive than the use of a pen register or a trap-and-trace device, found not entitled to Fourth Amendment protection. *See Smith*, 442 U.S. at 745–56; ECF No. 117-1 at 7. However, pen registers and trap-and-trace devices record nothing beyond the *outgoing* phone numbers dialed. *Smith*, 442 U.S. at 742. In *Smith v. Maryland*, 442 U.S. 735 (1979), the Court rejected the notion of a reasonable expectation of privacy in a dialed phone number because "all telephone users realize that they must 'convey' phone numbers to the telephone company" and further realize that those same numbers are used for billing purposes. *Id.* Although the target of the pen register may have taken steps to keep the conversation private, "his conduct was not and could not have been calculated to preserve the privacy of the number he dialed." *Id.* at 743; *see also Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").

The same cannot be said for a unique identifier. A cell phone user does not knowingly or willingly relinquish a unique identifier several times a minute as the cell phone connects to a cell tower. Accordingly, while use of a CSS may record only a "snapshot" of information as it relates to the unique identifier and location of its user, *Andrews v. Balt. City Police Dep't*, No. 18-1953, 2026 WL 2872021, at *8 (4th Cir. Sep. 24, 2026), CSS use nonetheless amounts to a search. This is so because it is "akin to sense-enhancing technology" which allows law enforcement to extract information from the cell phone otherwise shielded from public view. *Id.* at *9 (citing *United States v. Karo*, 468 U.S. 705, 714 (1984)). It is, in this regard, no different from the information

the Court found protected from warrantless searches in *Riley v. California*, 573 U.S. 373, 403 (2014) (contents of cell phone), *Carpenter v. United States*, 585 U.S. 296, 310 (2018) (historical cell site information), or *Chatrie v. United States*, 146 S. Ct. 2193, 2199 (2026) (cell site information of short duration).

Moreover, the information itself—the cell phone's unique serial number that tied Marcantoni's cell phone to an assigned phone number—is the very kind of information which, once hidden, cannot be exposed through law enforcement manipulation, absent a warrant or a recognized exception to the warrant requirement. Although Defendants blithely contend that "a phone's serial number is hardly more private" than the dialed numbers captured by a pen register, ECF No. 117-1 at 7, well-worn precedent says otherwise. As the Supreme Court made plain in *Arizona v. Hicks*, 480 U.S. 321 (1987), a warrantless intrusion to obtain the serial numbers tied to stereo equipment enjoys equivalent constitutional protection as the information in "letters or photographs." *Id.* at 325. "It matters not that the search uncovered nothing of any great personal value to respondent," namely, "serial numbers." *Id.* "A search is a search, even if it happens to disclose nothing but the bottom of a turntable." *Id.* Defendants give the Court little reason to part company with this view. Because Marcantoni maintains a reasonable expectation of privacy in the contents of his cell phone, using a CSS to obtain the phone's unique identifier amounts to a search protected under the Fourth Amendment.

The Court next turns to whether the officers enjoy qualified immunity from suit.

### B. The Constitutionally Protected Right Was Not Clearly Established

The defense of qualified immunity "shields individual law enforcement officers from civil liability when, in light of clearly established law, they could reasonably have believed that their actions were lawful." *Andrews*, 2026 WL 2872021, at *10 (citing *Henry v. Purnell*, 652 F.3d 524,

531 (4th Cir. 2011)); *see Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024); *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). Where a reasonable officer in the defendant's shoes would know that his conduct amounts to a Fourth Amendment violation, then qualified immunity shall lie. *See Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). For qualified immunity to apply, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The law at the time of the alleged violation must place the issue "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

To a reasonable officer in Defendants' shoes, the right was not clearly established. As the Fourth Circuit recently explained, CSS technology has been around for decades, but constitutional challenges to its use have not. *Andrews*, 2026 WL 2872021, at *10. Officers in the Marcantoni investigation deployed a CSS in 2010. Since then, the Supreme Court established in *Riley* a person's reasonable expectation of privacy in cell phone contents, 73 U.S. at 403, and next confirmed the privacy right inherent in the "whole of one's movements" in *Carpenter*. 585 U.S. at 320. Courts, including the Fourth Circuit, more recently applied these principles to law enforcement's use of a CSS as a geolocator. *See Andrews*, 2026 WL 2872021, at *1; *see also United States v. Gibson*, 996 F.3d. 451, 460 (7th Cir. 2021); *In re Use of a Cell-Site Simulator*, 531 F. Supp. 3d at 7; *Temple*, 2017 WL 7798109, at *29 (collecting cases). But as for using CSS to obtain a cell phone's unique identifier, only one court has reached the question, seeing it differently than this Court does. *See United States v. Woodson*, Case No. 4:16CR541AGF(SPM), 2018 WL 7150388, at *9 (E.D. Mo. Nov. 21, 2018) (holding that the use of a CSS to obtain an identifier from the phone of a suspect whose location is known "does not give rise to the same

privacy and Fourth Amendment concerns articulated in *Carpenter*”), *R. & R. adopted*, 2019 WL 398453 (E.D. Mo. Jan. 31, 2019). “[T]he ‘contours of the right’” simply were not “so conclusively drawn as to leave no doubt that the challenged action was unconstitutional.” *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (quoting *Anderson*, 483 U.S. at 640)). Nor is the right at issue so fundamentally plain under “existing precedents.” *Carpenter*, 585 U.S. at 306; *cf. Andrews*, 2026 WL 2872021, at *7, 10. Accordingly, Defendants are entitled to qualified immunity.

## IV. Conclusion

For the foregoing reasons, Defendants’ motion for summary judgment is GRANTED on the defense of qualified immunity, and Marcantoni’s motion for summary judgment is DENIED as moot. A separate Order follows.

October 15, 2026
Date

/s/
PAULA XINIS
United States District Judge